DANIEL M. BROWNE *vs.* PROVIDENCE, HARTFORD AND FISHKILL RAILROAD COMPANY.

A railroad corporation, which is obliged by statute to make all needful fences and cattle guards on the sides of its railroad, is liable for injuries by its engines to cattle straying at large through the land of a stranger upon its road, by reason of its negligence in placing such fences and guards.

ACTION OF TORT for injury to the plaintiff's cattle by an engine of the defendants, running on their railroad, by reason of their negligence in not fencing their road as required by law. Trial in the court of common pleas, before *Perkins,* J., who signed this bill of exceptions:

" By the law of Connecticut, in which state the injury arose,

the defendants were bound to make all needful fences, culverts and cattle-guards on the sides of their railroad. Evidence was introduced tending to show that at the place where the cattle entered upon the railroad, a fence or some barrier was necessary to prevent cattle from going upon it from the highway; that the defendants had kept a fence and wood pile there till the day before the accident, when they removed the wood, leaving the place open to the road where the wood pile before had been. Evidence was also offered to show that the plaintiff's cattle escaped from his lot, situated at the distance of a quarter of a mile from the place where the injury occurred, without the knowledge or fault of the plaintiff, or of any other person, and from thence strayed along the highway, and then went upon the defendants' road, passing in their way across the uninclosed door-yard of one Hatch, who lived at the crossing near which the accident happened, By the laws of the State of Connecticut for the year 1855, it was enacted that cattle should not be allowed to go at large on the highway.

" The defendants requested the court to instruct the jury that if they should find that the plaintiff's cattle were unlawfully at large and unattended on the highway, and went upon the defendants' road from the highway, the defendants would not be liable in this action for the want of a fence or cattle-guard, whether the cattle were so at large by the fault of the plaintiff or otherwise; and that if the jury should find that the plaintiff's cattle were at large and unattended on the highway, and went from thence on to the land of a party other than the plaintiff, and from thence upon the defendants' road, the defendants would not be liable for want of a fence between their road and the land of the third party, whether the cattle were so at large by fault of the plaintiff or otherwise.

" The court refused so to instruct the jury; but, in the absence of any proof of the laws of Connecticut, except that above stated, the court did instruct the jury, that the plaintiff must satisfy them, and the burden was on him to satisfy them that no fault or negligence, in any way contributing to the injury, was imputable to the plaintiff, but that he was exerci·-

ing ordinary care, and that the whole loss and injury arose solely from the negligence and want of care and fault of the defendants; that however great might be the want of care, negligence or fault of the defendants in connection with the injury, still they would not be liable if there was any fault, in any manner contributing to the loss, attributable to the plaintiff; and that if the damage was caused in consequence of the negligence of the defendants, in not placing fences and guards where ordinary prudence and care, irrespective of statute regulations, would require them to be placed to guard the lives and property of the public, the defendants would be liable.

" The defendants introduced evidence tending to show that the plaintiff's cattle escaped from his lot, because they were unruly, or, if they were not unruly, then because of the insufficiency of the plaintiff's fences; and the court ruled that, if either of these facts was found, and contributed to the loss, the plaintiff could not recover.

" The verdict was for the plaintiff. To these instructions and rulings the defendants except."

*E. F. Head,* for the defendants. The plaintiff's cattle being at large and unattended upon the highway were by the laws of Connecticut unlawfully upon the highway. *St.* of Conn. of 1855, *c.* 64. The defendants were not bound to fence against cattle unlawfully on the highway. *Towns* v. *Cheshire Railroad,* 1 Foster, 363. *Tonawanda Railroad* v. *Munger,* 5 Denio, 255. Cattle escaping from the enclosure of the owner, and straying upon a railroad, are trespassers, and no action can be maintained for injury to them. And the law charges the owner with negligence, though his enclosure is well fenced and he is guilty of no actual negligence. *Munger* v. *Tonawanda Railroad,* 4 Comst. 349.

If the cattle passed from the highway upon the land of Hatch and thence upon the railroad, they were unlawfully on Hatch's land; and the defendants, whatever were their duties in regard to fences as between them and Hatch, were not bound to fence against the plaintiff's cattle unlawfully on his land. *Ricketts* v. *East & West India Docks & Birmingham Junction Railway,* 12

C. B. 160. *Perkins* v. *Eastern Railroad*, 29 Maine, 307. Redfield on Railways, 374, & cases cited. *Rust* v. *Low*, 6 Mass 90. *Thayer* v. *Arnold*, 4 Met. 589.

*E. Wilkinson*, for the plaintiff.

METCALF, J. The only question for our decision is, whether the defendants have any legal ground of exception to the instructions that were given to the jury. And we are of opinion that they have not.

The bill of exceptions shows that by the law of Connecticut, where the plaintiff's injury was sustained, the defendants were bound to make all needful fences, culverts and cattle-guards, by the sides of their road, and that cattle were not allowed to go at large on the highway ; and that the plaintiff's cattle, having strayed into the highway, without the knowledge or fault of any one, went therefrom, across an unenclosed door-yard owned by a third person, upon the defendants' road, at a place where a fence or barrier was necessary to prevent their going upon it, but where there was no such fence or barrier, and were killed by the defendants' engine.

The defendants place their defence on the ground that they were not bound to fence against cattle unlawfully on the highway, or unlawfully in the door-yard from which the plaintiff's cattle went upon their railroad ; that the law on which the plaintiff relies imposes on them only the common law duty of the owners of adjoining lands, namely, to fence against cattle rightfully on such lands. The plaintiff denies that the common law is to be applied to this case, it being superseded by the state law in question, the purpose of which law is to protect all cattle, whether trespassers or not, and whether they belong to the owner of the adjoining land or to others. This case is to be decided by that law, of which we have no further judicial knowledge than is given by the terms in which the bill of exceptions states it.

Several of the state courts have decided that statutes, requiring railroad corporations to make fences on the sides of their roads, impose on them only the common law duty, and subject them only to the common law liability of adjoining landowners,

according to the position taken in this case by the defendants. A contrary decision was made by the New York court of appeals, in *Corwin* v. *New York & Erie Railroad*, 3 Kernan, 42, which sustains the position taken by the plaintiff. So where an act of parliament required a railway company to keep gates across its road, and keep them constantly closed; and horses strayed from their owner's field into the highway, and thence went upon the railway through an open gate which the company was required to keep shut, and were killed by a railway train; it was decided that the company was liable in damages to the owner. Patteson, J. said: "The act directs that the gates shall be kept constantly closed; and I think that imposes an obligation to keep them closed as against everything, whether straying or passing; but at all events the horses were on the road lawfully as against the company." *Fawcett* v. *York & North Midland Railway*, 16 Ad. & El. N. R. 618. And in an earlier case, which was an action against a railway company for killing the plaintiff's sheep, by driving an engine over them, Baron Parke said: "If the cattle had escaped through defect of fences which the company should have kept up, the cattle were not wrongdoers, though they had no right to be there; and their damage is a consequent damage from the wrong of the defendants in letting their fences be incomplete or out of repair, and may be recovered in an action on the case." *Sharrod* v. *London & North Western Railway*, 4 Exch. 587.

In view of the recent origin of railroads, and of the dangers that attend their operations by means of steam, which was never used on highways as a motive power, we cannot think that the law, by which these defendants were bound to make all needful fences and cattle-guards by the sides of their road, was intended to hold them only to the common law duty and liability of the owners of adjoining lands under the old order of things; but we are of opinion that it was intended to be applied to "the new circumstances and condition of things arising out of the general introduction and use of railroads in the country;" (3 Kernan, 47;) that it was designed for the safety of the public and for the protection of all domestic

animals, whether rightfully or wrongfully out of their owner's enclosure. We therefore adopt, and apply to this case, the doctrine of the cases above cited, and not of those on which the defendants rely. See a collection of the decisions on this subject in Redfield on Railways, *c.* 20, and Pierce on Railroads, *c.* 15.

What negligence of the plaintiff would have prevented his recovery of damages is not now a question. The jury have found that no negligence of his caused or contributed to cause his injury, but that it was caused solely by the neglect of the defendants to fence their road, and judgment is to be entered on their verdict.

Since ordering judgment, we have had the satisfaction of finding that a like determination had previously been made by the court of errors of the State of Connecticut. *Isbell* v. *New York & New Haven Railroad,* 27 Conn. 393.

*Exceptions overruled.*